ADAMS, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF LOUISE BLYTH TIMKEN (Deceased), et al., | ) ) ) | CASE NO. 5:04CV1188 |
| Plaintiffs, | ) ) | JUDGE JOHN R. ADAMS |
| v. | ) ) ) | MEMORANDUM OF OPINION AND ORDER |
| UNITED STATES OF AMERICA, | ) ) | [RESOLVING DOCS. 15 and 16] |
| Defendant. | ) | |

In this tax refund case, the plaintiffs[1] seek a refund of over $4 million in generation- skipping transfer ("GST") tax plus statutory interest. Plaintiffs' entitlement to the refund turns on whether Treasury Regulation § 26.2601-1(b)(1)(v)(A), the constructive additions Regulation (the "Regulation"),[2] is valid; and, if the Regulation is valid, whether it applies to the facts in this case. Through their cross-motions for Summary Judgment (Docs. 15 and 16), which are presently before the Court, the parties have fully briefed the issues. The United States of America filed a Brief in Support of its Motion for Summary Judgment (Doc. 17), a Brief in Opposition to plaintiffs' Motion for Summary Judgment (Doc. 20), and a Reply Brief (Doc. 26). Plaintiffs filed a Brief in Opposition to Defendant's Motion for Summary Judgment (Doc. 19), a

---

[1] Plaintiffs are the Estate of Louise Blyth Timken, Henry H. Timken, Jr. Trust Fund A, Henry H. Timken, Jr. Trust, Fund A1A fbo Alexander C. Timken, Henry H. Timken, Jr. Trust, Fund A1B fbo Peter T. Toot, Henry H. Timken, Jr. Trust, Fund A1C fbo Elizabeth Burnham Timken, Henry H. Timken, Jr. Trust, Fund A2A fbo Susan Mead Matthews, Henry H. Timken, Jr. Trust Fund A2B fbo Thomas Wesley Matthews, Henry H. Timken, Jr. Trust, Fund A2C fbo Anna Virginie Corwin Timken, Henry H. Timken, Jr. Trust, Fund A2D fbo Nicholas Timken, Henry H. Timken, Jr. Trust, Fund A2E fbo John Henry Timken, and Henry H. Timken, Jr. Trust, Fund A2F fbo Stuart Morgan Timken (collectively "Plaintiffs").

[2] *See* Treasury Decision 8644, dated December 27, 1995, 60 FR 66898-02, 1995 WL 17001231.

Reply Brief (Doc. 25), and two Notices of Supplemental Authority  (Docs. 27 and 28).  The parties also filed a Joint Stipulation of Facts  (Doc. 14).

The Court has also considered the supplemental memoranda (Docs. 37 and 38) filed on July 10, 2008, in response to the Court's Order (Doc. 32) that the parties address the decision of the United States Court of Appeals for the Sixth Circuit in *Estate of Gerson v. C.I.R.*, 507 F.3d 435 (6th Cir. 2007), *cert. denied*, *Kleinman v. C.I.R.*, 128 S.Ct. 2502 (2008)[3] and its impact on the issues presented in the case at bar.

The Court has reviewed the motions, memoranda in support and in opposition, the record evidence, and the applicable law.  For the reasons set forth herein, the Court holds that the Regulation is valid and applies to the facts in this case and the plaintiffs are not entitled to a tax refund.  Thus, plaintiffs' Motion for Summary Judgment (Doc. 15) will be DENIED and defendant's Motion for Summary Judgment (Doc. 16) will be GRANTED.

## THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriately granted when

> . . . the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  *See also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).

The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party must

---

[3] Plaintiffs filed an *amicus* brief in support of the taxpayer in the Sixth Circuit.  Plaintiffs also filed an *amicus* brief in support of the Petition for Writ of Certiorari in the Supreme Court.

"show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992). Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. Under Fed. R. Civ. P. 56(e)(2),

> . . . an opposing party may not rely merely on allegations or denials in its own pleading; rather, it's response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.

The non-moving party must, in order to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing the motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine" the Court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the

3

non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.*

## THE FACTS

On November 17, 1936, Henry H. Timken, Jr. established a revocable trust in favor of himself for his life and upon his death for his wife, Louise Blyth Timken, under the name "Henry H. Timken, Jr. Trust, Fund A." Doc. 14 at ¶¶1 and 3. At the time of its creation, Henry H. Timken, Jr. transferred assets to the Henry H. Timken, Jr. Trust, Fund A. *Id.* at ¶4. The original Trustee was the Cleveland Trust Company. Subsequent trustees were Ameritrust, Key Bank, N.A. (the trustee at the time of Louise Blyth Timken's death), and finally Mellon Bank, N.A. (the Trustee as of August 15, 2005). *Id.* at ¶5.

Henry H. Timken, Jr. modified the Henry H. Timken, Jr. Trust, Fund A several times before his death on March 15, 1968 – the final modification was dated December 29, 1964 (hereinafter the Henry H. Timken, Jr. Trust, Fund A, as modified on December 29, 1964, shall be referred to as the "Trust Agreement"). *Id.* at ¶¶6-15; *see also* Doc. 14-6 (Trust Agreement). It is this latter trust that contains the relevant dispositive provisions. The Trust became irrevocable upon the death of Henry H. Timken, Jr. *Id.* at ¶16. According to one of the advisors to the Trust, "no corpus was added" to the Trust after September 25, 1985. Affidavit of Donald R. Black (Doc. 15-3) at ¶4.

In Article I(b)(2) of the Trust Agreement, the Trust gave Louise Blyth Timken a general power of appointment by will in order to qualify the Trust for the estate tax marital deduction

under Internal Revenue Code ("I.R.C.") § 2056(b)(5).[4] Doc. 14-6 at 4-5. When she died on October 3, 1998, Louise Blyth Timken had exercised her general power of appointment only to the extent of directing that the federal estate tax attributable to the inclusion of the Trust property in her gross estate be paid from the Trust property. She did not otherwise exercise the general power of appointment. Doc. 14 at ¶19; *see also* Doc. 14-7 (the Last Will and Testament and two codicils of Louise Blyth Timken). Because of her general power of appointment over the Trust property, the Trust property was included in Mrs. Timken's gross estate for federal estate tax purposes pursuant to I.R.C. § 2041.[5] The Estate of Louise Blyth Timken paid $33,600,952.67 in federal estate tax. Doc. 15-3 at ¶9. The amount of the federal estate taxes attributable to the

---

[4]Pursuant to 26 U.S.C. § 2514(e), "[t]he lapse of a power of appointment created after October 21, 1942, during the life of the individual possessing the power shall be considered a release of such power. . . ." Further, "[t]he . . . release of a general power of appointment created after October 21, 1942, shall be deemed a transfer of property by the individual possessing such power." 26 U.S.C. § 2514(b).

[5]Section 2041, 26 U.S.C. provides in relevant part:

**(a)** **In general.** – The value of the gross estate shall include the value of all property.
\* \* \*
**(2) Powers created after October 21, 1942.** – To the extend of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, or with respect to which the decedent has at any time exercised or released such a power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive. For purposes of this paragraph (2), the power of appointment shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised.
\* \* \*
**(b)** **Definitions.** – For purposes of subsection (a) –
**(1) General Power of Appointment.** – The term "general power of appointment" means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that – . . . .
**(2) Lapse of power.** – The lapse of a power of appointment created after October 21, 1942, during the life of the individual possessing the power shall be considered a release of such power. . . .

5

inclusion of the Trust assets into the Estate of Louise Blyth Timken totaled $15,313,793.80, which was paid by the Trust. *Id.* at ¶8.

Louise Blyth Timken and Henry H. Timken, Jr. did not have any children of their own. Doc. 14, at ¶17. W.R. Timken and John M. Timken were the brothers of Henry H. Timken, Jr. Edith M. Timken, Jane M. Timken, Barbara C. Timken, and John M. Timken, Jr. are the nieces and nephew of Louise Blyth Timken and Henry H. Timken, Jr.

All children of W.R. Timken and John M. Timken were forty years or older at the death of Louise Blyth Timken and were entitled to receive their entire balance outside of any trust. *Id.* at ¶20. Two of the three children of W.R. Timken received their interest under the terms of the Trust Agreement as soon as practicable following the death of Louise Blyth Timken. *Id.* at ¶21. The amounts the two children of W.R. Timken received under the terms of the Trust Agreement are not in any way affected or involved in this lawsuit and they make no claim for refund of any tax related to the distributions which they received under the terms of the Trust Agreement. *Id.* at ¶22.

Edith M. Timken is the third child of W.R. Timken, and she did not receive any interest in the Trust because she made a Qualified Disclaimer of any interest in the Trust. *Id.* at ¶23; *see also* Doc. 14-8 (Edith M. Timken's Qualified Disclaimer). Following Edith M. Timken's Qualified Disclaimer, that share of the Trust was subdivided and placed into trusts pursuant to the terms of the Trust Agreement for her three children: Alexander C. Timken, Peter T. Toot, and Elizabeth Burnham Timken, who were all then under the age of 40. Doc. 14 at ¶25. The trust established for Alexander C. Timken is named "Henry H. Timken, Jr. Trust, Fund A1A fbo Alexander C. Timken" and one-third of the funds otherwise due to Edith M. Timken were

6

distributed into that trust. *Id.* at ¶26.  The trust established for Peter T. Toot is named "Henry H. Timken, Jr. Trust, Fund A1B fbo Peter T. Toot" and one-third of the funds otherwise due to Edith M. Timken were distributed into that trust. *Id.* at ¶27.  The trust established for Elizabeth Burnham Timken is named "Henry H. Timken, Jr. Trust, Fund A1C fbo Elizabeth Burnham Timken" and the remaining one-third of the funds otherwise due to Edith M. Timken were distributed into that trust. *Id.* at ¶28.

The children of John M. Timken (Jane M. Timken, Barbara C. Timken, and John M. Timken, Jr.) also did not receive any interest in the Trust because each made a Qualified Disclaimer of any interest in the Trust. *Id.* at ¶¶29 and 30; *see also* Docs. 14-9 through 14-11 (Qualified Disclaimers of Jane M. Timken, Barbara C. Timken, and John M. Timken, Jr.).  Following the Qualified Disclaimer made by Jane M. Timken, that share of the Trust otherwise going to her was subdivided equally and placed into two separate trusts for her two children: Susan Mead Matthews and Thomas Wesley Matthews, who were both then under the age of 40. Doc. 14 at ¶¶32 and 33.  The trusts established for Susan Mead Matthews and Thomas Wesley Matthews are named the "Henry H. Timken, Jr. Trust, Fund A2A fbo Susan Mead Matthews" and the "Henry H. Timken, Jr. Trust, Fund A2B fbo Thomas Wesley Matthews", respectively. *Id.* at ¶¶34 and 35.

Following Barbara C. Timken's Qualified Disclaimer and pursuant to the terms of the Trust, that share of the Trust was subdivided equally and placed into two separate trusts for her two children (Anna Virginie Corwin Timken and Nicholas Timken), who were both then under the age of 40.  *Id.* at ¶¶37and 38.   The trusts established for Anna Virginie Corwin Timken and Nicholas Timken are named the "Henry H. Timken, Jr. Trust, Fund A2C fbo Anna Virginie

7

Corwin Timken" and the "Henry H. Timken, Jr. Trust, Fund A2D fbo Nicholas Timken", respectively.  *Id.* at ¶¶39 and 40.

Following the Qualified Disclaimer made by John M. Timken, Jr., that share of the Trust otherwise going to him was subdivided and placed into two equal parts and placed in separate trusts for his two children (John Henry Timken and Stuart Morgan Timken), who were both then under the age of 40.  *Id.* at ¶¶42 and 43.  The trusts established for John Henry Timken and Stuart Morgan Timken are named the "Henry H. Timken, Jr. Trust, Fund A2E fbo John Henry Timken" and the "Henry H. Timken, Jr. Trust, Fund A2F fbo Stuart Morgan Timken" respectively.  *Id.* at ¶¶44 and 45.

On June 30, 1999, the Executors of the Estate of Louise Blyth Timken filed a Federal Estate Tax Return (IRS Form 706) for the Estate of Louise Blyth Timken.  *Id.* at ¶46.  With IRS Form 706, the Executors filed a GST tax voucher (IRS Schedule R-1) which reported that a GST tax of $4,077,252.80 was due and owing to the IRS as provided for in I.R.C. §§ 2601 - 2664 based on the generation-skipping transfers resulting from the Qualified Disclaimers filed by Edith M. Timken, Jane M. Timken, Barbara C. Timken, and John M. Timken, Jr.  *Id.* at ¶48; *see also* Doc. 14-12 (IRS Schedule R-1).  The computation and payment of the GST tax was made in compliance with and because of the IRS instructions related to the GST tax.  Doc. 15-3 at ¶10.

With the filing of IRS Schedule R-1, plaintiff Henry H. Timken Jr. Trust, Fund A paid the U.S. Treasury the GST tax in the amount of $4,077,252.80.  Doc. 14 at ¶¶50 and 52; *see also* Doc. 14-13 (the check used to pay the GST tax).  On June 27, 2002, plaintiff Henry H. Timken Jr. Trust, Fund A filed a Claim for Refund (IRS Form 843) of the $4,077,252.80 GST tax.

8

Doc. 14 at ¶53; *see also* Doc. 14-14 at 3-7 (IRS Form 843 and attachment thereto). The IRS has not paid the claim for refund, and plaintiff Henry H. Timken Jr. Trust, Fund A timely commenced this lawsuit.[6]  Doc. 14 at ¶55.

The GST tax is imposed on every GST made after October 22, 1986, the date of enactment of the Tax Reform Act of 1986, Pub.L. No. 99-514, 100 Stat. 2085. A "generation-skipping transfer" is defined by 26 U.S.C. § 2611(a) as "any of three types of transfers:  A taxable termination, a taxable distribution, or a direct skip." *E. Norman Peterson Marital Trust v. C.I.R.*, 102 T.C. 790, 793-94 (1994), *aff'd*, 78 F.3d 795, 800 (2d Cir. 1996). "In general, a transfer of an interest in property constitutes a 'direct skip' if:  (1) The transfer is subject to either the Federal gift tax or the Federal estate tax; and (2) the transfer is to a 'skip person.'" *Id.* at 794 (citing 26 U.S.C. § 2612(c)(1)). A "skip person" is a natural person assigned to a generation which is 2 or more generations below the generation assignment of the transferor or a trust whose interests are held by a skip person.  26 U.S.C. § 2613(a).

As the children of some of the nephews and nieces of Louise Blythe Timken, Alexander C. Timken, Peter T. Toot, Elizabeth Burnham Timken, Susan Mead Matthews, Thomas Wesley Matthews, Anna Virginie Corwin Timken, Nicholas Timken, John Henry Timken, and Stuart Morgan Timken are at least two generations below the generation assignment of Louise Blythe Timken.  Further, Louise Blythe Timken's general power of appointment over the marital trust corpus caused the Trust property to be included in her gross estate under section 2041. As such,

---

[6]The remaining plaintiffs are the Estate of Louise Blyth Timken, deceased, and the nine subtrusts created for the benefit of Alexander C. Timken, Peter T. Toot, Elizabeth Burnham Timken, Susan Mead Matthews, Thomas Wesley Matthews, Anna Virginie Corwin Timken, Nicholas Timken, John Henry Timken, and Stuart Morgan Timken.  Plaintiffs are not seeking double recovery by the estate and trusts, although the Complaint (Doc. 1) appears to request such relief.

both requirements of a "direct skip" are satisfied and the transfers of Trust property to the nine subtrusts constitute direct skips. 26 U.S.C. §§ 2651(b)(2) and 2613(a)(2). Indeed, the parties do not dispute that such transfers were "direct skips." *See* Doc. 19 at 6 (stating that the plaintiffs do not dispute that "the transfer of the Trust property in issue here would be subject to the GST tax" absent the grandfather clause of Tax Reform Act of 1986 § 1433(b)(2)(A)[7]).

## ANALYSIS

**Impact of the *Gerson* case on the issues presented**

*Gerson*, *supra*, was decided on November 9, 2007. The decedent in *Gerson* was the lifetime beneficiary of a pre-September 25, 1985 GST trust created by her husband. She was given the right to use the income during her life and to appoint a beneficiary to receive the corpus when she died. To the extent the decedent failed to exercise her power of appointment, the remaining trust assets flowed into a trust for her children's benefit. Decedent's will exercised her power of appointment in favor of her grandchildren. The irrevocable trust document at issue in *Gerson* did not provide for the direct skip to the grantor's or decedent's grandchildren. The Sixth Circuit affirmed the United States Tax Court's split decision to assess a tax on the proceeds of the irrevocable trust under the GST tax because the Commissioner's regulation reasonably construed an ambiguous statutory provision. 507 F.3d at 436. The Court of Appeals largely adopted the same rationale as did the Tax Court in upholding the validity of

---

[7]Section 1433(b)(2)(A) excepts transfers from the reach of the GST tax. The statute provides that all transfers under a trust which is irrevocable on September 25, 1985, are exempt from the reach of the GST tax. The only exclusion to this broad exception is for corpus added to the trust after September 25, 1985. It states:
>  2) EXCEPTIONS. -- The amendments made by this part shall not apply to --
>  (A) any generation-skipping transfer *under* a trust which was irrevocable on September 25, 1985, but only to the extent that such transfer is not made out of corpus *added to the trust* after September 25, 1985,  (Emphasis added.)

Regulation § 26.2601-1(b)(1)(i).[8]  Similar to the taxpayer in *Gerson*, the plaintiffs in the case at bar concede that the GST tax would ordinarily apply, but cite the effective date provision that grandfathers certain unmodified irrevocable trusts created before 1985.  *See* Tax Reform Act of 1986 § 1433(b)(2)(A).

After finding the grandfather clause to be ambiguous as applied, the Sixth Circuit then applied *Chevron*[9] deference to the agency's interpretation of Regulation § 26.2601-1(b)(1)(i) and found the agency offered a reasonable interpretation of the statute.  Pursuant to the language of the Regulation applicable to the taxpayer in *Gerson*, the grandfather clause does not apply to a transfer of property pursuant to the exercise, release, or lapse of a general power of appointment.  Because the taxpayer in *Gerson* had exercised a general power of appointment in such a way as to make a direct skip within the meaning of the GST tax, the Sixth Circuit determined that the assessment of the GST tax was appropriate.  The Court also explained in conclusion:

> . . . As the *Peterson* court recognized, "For tax purposes, a general power of appointment has for many, many years been viewed as essentially identical to outright ownership of the property."  78 F.3d at 800.  Thus, the regulation conforms the grandfather clause to other elements of the tax scheme.  *See* I.R.C. § 2041(a)(2) (power of appointment included in estate); *id.* § 2514(b) (exercise or release of a general power of appointment incurs gift tax).  In addition, the other exceptions to the GST tax surrounding the irrevocable trust provision all represent inescapable contingencies that justify grandfathering, while the Estate's proposed interpretation protects disproportionately broad reliance on prior tax laws. . . .

507 F.3d at 441.

---

[8] Final Treasury Regulation § 26.2601-1(b)(1)(i) (applicable on and after November 18, 1999) provides that the grandfather exception "does not apply to a transfer of property pursuant to the exercise, release, or lapse of a general power of appointment that is treated as a taxable transfer under chapter 11 [estate tax] or chapter 12 [gift tax]."

[9]*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

In their Joint Motion for Extension of Time to File Supplemental Memoranda (Doc. 33), filed on December 3, 2007, the parties stated they "believe[d] that the final conclusion of the *Gerson* case may be case determinative of this case." *Id.* at 1. On May 27, 2008, the Supreme Court denied certiorari. *See Kleinman v. C.I.R.*, 128 S.Ct. 2502 (2008). Thereafter, the plaintiffs filed a supplemental memorandum that provides in pertinent part:

> The *Gerson* case does settle certain issues in this case because it is binding precedent. However, *Gerson* does not settle all issues in this case. There is a difference in both the facts and the law between this case and the *Gerson* case, which means that this Court can and should rule in favor of Plaintiffs despite the holding in *Gerson*.

Doc. 38 at 1.

Defendant argues, to the contrary, that "[s]imply put, Gerson is dispositive of this action." Doc. 37 at 1. According to the defendant, "[b]ecause the Gerson court rejected the two arguments made by the plaintiffs here, that the regulation's interpretation of the statute was unreasonable, and is therefore invalid, and that the analysis in Simpson [v. United States, 183 F.3d 812 (8th Cir.1999)] and Bachler [v. United States, 281 F.3d 1078 (9th Cir. 2002)] should control, Gerson is dispositive of this action . . . ." *Id.* at 3.

**Plaintiffs' position after *Gerson***

Plaintiffs contend they qualify for exemption from the GST tax because of the grandfather provision of section 1433(b)(2)(A) of the Tax Reform Act of 1986. Plaintiffs' refund claim is based upon three arguments. First, the transfers from the Trust to the new trusts are not subject to the GST tax because the Trust is a pre-September 25, 1985, irrevocable trust and there were no additions to the corpus of the Trust after September 25, 1985. Therefore, the

plaintiffs are entitled to the refund under the plain language of section 1433(b).[10]  Second, Regulation § 26.2601-1(b)(1)(v)(A) is not a valid and enforceable regulation.  Finally, even if the Regulation is valid, it does not apply to the facts in this case.[11]  According to the plaintiffs, the distributions to the nine new trusts at issue are not affected by the constructive additions regulation.

**Validity of Regulation § 26.2601-1(b)(1)(v)(A)**

Defendant contends that the Regulation controls and establishes that the plaintiffs are not entitled to a refund.  *See E. Norman Peterson Marital Trust v. Comm'r*, 78 F.3d 795, 800-801 (2d Cir. 1996) (In upholding the validity of section 26.2601-1(b)(1)(v)(A), the Second Circuit concluded that property remaining in the trust after the *lapse* of a general power of appointment was a constructive addition that became subject to GST tax because a general power of appointment is "essentially identical to outright ownership of the property.").  According to the defendant, the partial lapse of the general power of appointment in the case at bar constituted a

---

[10] With the understanding that Plaintiffs expressly reserve the right to challenge *Gerson* on appeal, Plaintiffs here must concede that Argument 1 of their Motion for Summary Judgment has either been explicitly or implicitly decided against them in the *Gerson* opinion.  Thus, Plaintiffs are conceding that it has been held by the Sixth Circuit that the statutory grandfather clause is ambiguous rather than a plain statute enforceable by its express terms as argued in their Motion for Summary Judgment (Doc. #15, Argument #1).
Doc. 38 at 2-3.

[11] If an argument varies with the claim for a tax refund, the Court is without jurisdiction to consider it.  According to the defendant, the Court is without jurisdiction to consider this argument because plaintiffs' claim for refund as presented to the IRS does not make this claim.  *See* Doc. 20 at 10.  "Numerous cases sustain the principle that the grounds on which a claim for a tax refund is made must be specifically set forth in the claim for refund itself, otherwise the court in a refund action is without jurisdiction to consider them."  *Estate of Bird*, 534 F.2d 1214, 1219 (6th Cir. 1976).  The Court finds that the defendant has received fair notice of the grievance.

post-September 25, 1985, constructive addition to the corpus of the Trust under the Regulation. The Regulation at issue in this case provides, among other things, that

> (v) Constructive additions. – (A) *Powers of Appointment*. – Except as provided in paragraph (b)(1)(v)(B) of this section, where any portion of a trust remains in the trust after the post-September 25, 1985, release, exercise, or lapse of a power of appointment over that portion of the trust, and the release, exercise, or lapse is treated to any extent as a taxable transfer under chapter 11 or chapter 12, the value of the entire portion of the trust subject to the power that was released, exercised, or lapsed is treated as if that portion had been withdrawn and immediately retransferred to the trust at the time of the release, exercise, or lapse. . . .

Treasury Regulation § 26.2601-1(b)(1)(v)(A).[12] It was issued by the Commissioner pursuant to the authority of 26 U.S.C. § 7805(a), which authorizes the issuance of "all needful rules and regulations for the enforcement of this title, including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue." *Gerson*, 507 F.3d at 437-38. There is no dispute that the Regulation is an interpretive regulation and not a legislative regulation. *See Rowan Companies, Inc. v. United States*, 452 U.S. 247, 253 (1981) ("Because we therefore can measure the Commissioner's interpretation against a specific provision in the Code, we owe the interpretation less deference than a regulation issued under a specific grant of authority to define a statutory term or prescribe a method of executing a statutory provision."). Defendant maintains that the Regulation interprets the language "added to the trust" in section 1433(b)(2)(A) to encompass property that is subject to a general power of appointment.

Plaintiffs cite two cases in support of their argument that this Court should find that the Regulation is invalid. In both cases, the courts held that a grandfathered trust passing pursuant

---

[12]Treasury Regulation § 26.2601-1(b)(1)(v)(D) contains several examples illustrating constructive additions and the application of paragraph (b)(1)(v)--the first of which presents a factual situation that is substantially similar to the situation presented by this case.

14

to the *exercise* of a taxable general power of appointment to skip persons did not become subject to GST tax because the purpose of the irrevocable trust exception in the effective date statute was to provide an exception to the general rule and permit pre-existing estate plans imbedded in pre-existing irrevocable trusts to be grandfathered.

In the first case, *Simpson*, *supra*, an irrevocable trust gave the settlor's wife a general power of appointment by will.  The widow exercised this power to give the corpus to her grandchildren.  The Eighth Circuit found that the effective date provision allowed the settlor's wife to give the corpus to anyone she wanted without subjecting the transfer to the GST tax. *Simpson*, 183 F.3d at 814-15.  In the second case cited by the plaintiffs, *Bachler*, *supra*, the Ninth Circuit followed the holding of the Eighth Circuit in *Simpson*, reversed the judgment of the district court, and construed the effective date provision in favor of the taxpayer.  The Ninth Circuit distinguished *Peterson*, *supra*, on the ground that *Peterson* involved the lapse of a power of appointment whereas *Bachler* involved the exercise of a power of appointment.

According to the defendant's briefs filed prior to the *Gerson* decision, *Simpson*, *supra*, and *Bachler*, *supra*, are factually distinguishable on the ground that in the present matter the general power of appointment was not exercised.  *See, e.g.* Doc. 17 at 24-25.  Since the *Gerson* decision, the Court concludes that the distinction does not matter in the Sixth Circuit because the estate tax result is the same whether it's the *exercise* or *lapse* of a power of appointment.  As the Sixth Circuit stated in *Gerson*, *supra*,

> . . . we disagree that exercise and lapse come to different ends.  In the exercise of a power of appointment, two transfers occur.  In the first transfer, the appointment power holder becomes the owner of the trust assets for tax purposes.  *See* I.R.C. § 2041(a)(2) (including assets over which a decedent has a power of appointment in the decedent's taxable estate).  In the second transfer, the holder transfers the assets to a skip person.  If the second transfer occurs after the GST tax became

15

> effective, tax liability ensues.  By contrast, in the lapse of a power of appointment, three transfers occur.  The creation of the power of appointment again amounts to a first transfer, but because the holder of the power of appointment never uses the power, the assets flow back through the trust as a second transfer, reaching the skip person in the third transfer from the trust. *See* 26 C.F.R. § 26.2601-1(b)(1)(v)(A) ("[T]he value of the entire portion of the trust subject to the power that was released, exercised, or lapsed is treated as if that portion had been withdrawn and immediately retransferred to the trust at the time of the release, exercise, or lapse.").  If the lapse occurs after 1985, liability results because assets were added to the trust corpus after September 25, 1985, per the second clause of the effective date provision.  Tax Reform Act of 1986 § 1433(b)(2)(A).

507 F.3d at 440-41.

Plaintiffs attempt to get around the *Gerson* decision by arguing that the Regulation at issue in this case materially differs from the amended Regulation under review in *Gerson*. Doc. 38 at 3-5.  According to the plaintiffs,

> [t]he specific Treasury Regulation language quoted and relied upon by the Sixth Circuit in *Gerson* to rule against the taxpayer simply does not exist in the earlier Treasury Regulation which applies to Plaintiffs in this case.  Thus, the specific language treating the exercise, release, or lapse of a general power of appointment as constituting a taxable transfer is not included in the regulation applicable to Plaintiffs.  In fact, there is no explicit language in the regulation applicable to Plaintiffs making such events a taxable transfer for purposes of the GST tax.

Doc. 38 at 3.  Regulation § 26.2601-1(b)(1)(i), as it was written at the time applicable to the plaintiffs, did *not* contain the following language which, according to plaintiffs, was held to be decisive in the *Gerson* case:

> **(b) Exceptions -- (1) Irrevocable trusts -- (i) In general.** . . . Further, the rule in the [sentence described above]  does not apply to a transfer of property pursuant to the exercise, release, or lapse of a general power of appointment that is treated as a taxable transfer under chapter 11 or chapter 12.  The transfer is made by the person holding the power at the time the exercise, release, or lapse of the power becomes effective, and is not considered a transfer under a trust that was irrevocable on September 25, 1985.  See paragraph (b)(1)(v)(B) of this section regarding the treatment of the release, exercise, or lapse of a power of appointment that will result in a constructive addition to a trust.  See

16

§ 26.2652-1(a) for the definition of a transferor.

In reaction to *Simpson*, *supra*, the IRS amended Regulation §26.2601-1(b)(1)(i) to specify that property transferred pursuant to a taxable general power of appointment is treated as a transfer by the power holder which subjects the property to GST tax. *See* Notice of Proposed Rulemaking on GST Issues, dated November 18, 1999, 64 FR 62997, 1999 WL 1039591 at 62998 ("the proposed regulations clarify the application of the effective date provisions when the exercise or lapse of a general power of appointment over an otherwise grandfathered trust results in property passing to a skip person"); *see also Estate of Gerson v. C.I.R.*, 127 T.C. No. 11, 127 T.C. 139, 150 (U.S.Tax Ct. Oct 24, 2006), *aff'd*, 507 F.3d 435 (6th Cir. 2007). Therefore, the plaintiffs contend that the defendant cannot rely on amended Regulation § 26.2601-1(b)(1)(i) as a basis for claiming that a GST tax should be imposed in the case at bar.

Unlike Regulation § 26.2601-1(b)(1)(i), the constructive additions regulation at issue in this case was not amended effective as of November 18, 1999. *Compare* Treasury Decision 8644, dated December 27, 1995, 60 FR 66898-02 with Notice of Proposed Rulemaking on GST Issues, dated November 18, 1999, 64 FR 62997, 1999 WL 1039591. Applying *Chevron* deference[13] to the agency's interpretation, the Court finds that Treasury Regulation

---

[13] When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. at 842-43.

17

§ 26.2601-1(b)(1)(v)(A) is valid as a permissible construction of the effective date provision of the GST tax which does harmonize with the plain language of the statute. *National Muffler Dealers Ass'n, Inc. v. United States*, 440 U.S. 472, 477 (1979) (a regulation is not a reasonable statutory interpretation unless it "harmonizes with the plain language of the statute, its origin, and its purpose").

**Assuming the Regulation is valid, it does apply to the facts in the case at bar**

Plaintiffs argue that even if the constructive additions regulation is valid, the situation presented in the instant matter falls outside of the coverage of the Regulation and, therefore, qualifies for the grandfather provision.

There are two requirements in the Regulation which must be present in order to remove it from the protection otherwise offered by the effective date provision that grandfathers certain unmodified irrevocable trusts created before September 25, 1985. The first is that it only applies to any portion of a trust that "*remains in the trust* after the . . . release, exercise, or lapse of a power of appointment" (emphasis added). The second element concerns whether "the release, exercise, or lapse is treated to any extent as a taxable transfer under [the gift or estate tax]." Contrary to plaintiffs' argument, the Court finds that both of these requirements are met in the case at bar.

Louise Blyth Timken died having a testamentary general power of appointment over the corpus of a marital deduction trust. When she died on October 3, 1998, Louise Blyth Timken had exercised her general power of appointment only to the extent of directing that the federal estate tax attributable to the inclusion of the Trust property in her gross estate be paid from the Trust property. She did not otherwise exercise the general power of appointment. Doc. 14 at

18

¶19; *see also* Doc. 14-7 (the Last Will and Testament and two codicils of Louise Blyth Timken). Section 26.2601-1(b)(1)(v)(A) as it was written at the time that Louise Blyth Timken died provides that the release, exercise, or lapse of a general power of appointment created in a pre-September 25, 1985 document is not a transfer *under the trust*, but rather a transfer *by the holder* of the general power of appointment, which occurs when the exercise of the power becomes effective. John B. Atkins, *Balancing the GSTT Exemption and the Marital Deduction*, 14 Prob. & Prop. 16, 20 (July/Aug. 2000).

For the grandfather clause of the Tax Reform Act of 1986 § 1433(b)(2)(A) to except a trust from the GST tax, the trust must have been irrevocable on September 25, 1985, and the transfer cannot have been made from corpus added to the trust after that date. It is stipulated that the Trust became irrevocable upon the death of Henry H. Timken, Jr. Doc. 14 at ¶16. The Court agrees with defendant's argument that the transfers in this case were made from property constructively added to the trust, as outlined in section 26.2601-1(b)(1)(v)(A), after September 25, 1985; and, therefore, the exception to the GST tax that is authorized by the grandfather clause does not apply here. *See* Doc. 17 at 12. The Court holds that the lapse of the power by Louise Blyth Timken is both a constructive addition and a transfer that results in tax liability because assets were added to the trust corpus after September 25, 1985, per the second clause of the effective date provision. *Gerson*, 507 F.3d at 440-41; *see also Peterson*, 78 F.3d at 799 ("There is, therefore, no question that if the regulation is valid, the lapse of Mrs. Peterson's power of appointment is to be treated as an addition to the trust made after September 25, 1985, and the GST [tax] will apply to the transfer of that trust to Mr. Peterson's grandchildren."). The lapse of decedent's general power of appointment over the marital trust corpus coupled with the

Qualified Disclaimers filed by Edith M. Timken, Jane M. Timken, Barbara C. Timken, and John M. Timken, Jr. resulted in direct skips that are subject to the GST tax.

## **CONCLUSION**

Based upon the foregoing, the United States' Motion for Summary Judgment (Doc. 16) is GRANTED and plaintiffs' Motion for Summary Judgment (Doc. 15) is DENIED upon the grounds that there is no genuine issue as to any material fact and the United States of America is entitled to a judgment as a matter of law on the merits of the complaint. Final judgment will be entered in favor of the United States of America.

IT IS SO ORDERED.

| | |
|---|---|
| March 25, 2009 | */s/ John R. Adams* |
| Date | John R. Adams |
| | U.S. District Judge |